1  Harvey M. Moore, Esq., CSB 101128
2  Terri Lazo, Esq., CSB 228663
   The Moore Law Group,
3  A Professional Corporation
   3710 S. Susan Street, Suite 210
4  PO Box 25145
5  Santa Ana, CA 92799
   (714) 431-2000
6

7  Attorneys for Defendant
8  The Moore Law Group, A.P.C.

9                    UNITED STATES DISTRICT COURT

10                   CENTRAL DISTRICT OF CALIFORNIA

11

12  HAKOB AYVAZIAN, an individual      )    Case No. 2:12-cv-01864- ODW (FMOx)
13                                      )
                          Plaintiff,    )
14         vs.                          )    **MEMORANDUM OF POINTS AND**
                                        )    **AUTHORITIES IN SUPPORT OF**
15  THE MOORE LAW GROUP, A California   )    **DEFENDANT THE MOORE LAW**
    Company; NELSON & KENNARD, A        )    **GROUP, APC'S MOTION FOR**
16  Professional Company; ENCORE        )    **SANCTIONS PURSUANT TO**
17  RECEIVABLE MANAGEMENT, INC., A      )    **FEDERAL RULE OF CIVIL**
    Kansas Corporation; REDLINE         )    **PROCEDURE 11**
18  RECOVERY SERVICES, LLC, A New       )
    York Limited Liability Company; ASSET )
19  ACCEPTANCE, LLC, A Delaware Limited )
    Liability Company                   )
20                        Defendants.   )
                                        )
21                                      )
                                        )
22                                      )
                                        )
23                                      )
                                        )
24                                      )
                                        )
25                                      )    Hearing Date: July 9, 2012
                                        )    Time:  1:30 p.m.
26                                      )    Courtroom: 11 – Spring Street Level
                                        )    Judge: Otis D. Wright, II
27                                      )
28

                                        1

Defendant The Moore Law Group, APC ("TMLG"), through its undersigned counsel, files this Memorandum of Points and Authorities in Support of TMLG's Motion for Sanctions pursuant to Federal Rule of Civil Procedure ("FRCP") Rule 11[1] ("Rule 11").

## I.

## INTRODUCTION

Plaintiff, Hakob Ayvazian ("Plaintiff") filed the claims in this lawsuit against TMLG without any factual or legal support for them. In clear dereliction of its obligations to the Court as a pro se litigant, Plaintiff has maintained these claims against TMLG even after TMLG notified him in a safe harbor letter of its permissible purpose in running Plaintiff's credit report, of the proper notice provided by TMLG to Plaintiff regarding his account at issue and in full compliance with the Fair Debt Collection Practices Act ("FDCPA"), and that the pulling of credit in connection with the collection of a debt as allowed under the Fair Credit Reporting Act ("FCRA") and the failure to remove such permissible credit inquiry from Plaintiff's credit report, is not a violation of the FCRA, Consumer Credit Reporting Agencies Act ("CCRAA"), FDCPA nor the California

---

1 In compliance with Fed.R.Civ.P. 11's "safe harbor" requirement, Defendant TMLG served the Notice of Motion and Motion for FRCP 11 Sanctions; Memorandum in Support; and Declaration in Support, on Plaintiff at least 21 days prior to filing this Motion for Rule 11 Sanctions with the Court. (See Declaration of Terri Lazo).

Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), and also does not constitute an invasion of privacy nor defamation and libel per se.

## II.

## THE RULE 11 STANDARD

Rule 11(b) and 11(c) of the Federal Rules of Civil Procedure ("FRCP") provide, in relevant part, as follows:

> **(b) Representations to Court.**  By presenting to the court (whether by signing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney … is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> > (1)  it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> >
> > (2)  the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
> >
> > (3)  the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery
>
> **(c) Sanctions.**  If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney…that violated the rule or is responsible for the violation. . .

The purpose of Rule 11, including its monetary sanctions provisions, is to deter dilatory or abusive pretrial tactics and to streamline litigation by excluding baseless filings. *Cooter &*

*Gell v. Hartmarx Corp.* (1990) 496 U.S. 384; *Golden Eagle Distributing Corp. v. Burroughs Corp.* (9th Cir. 1987) 822 F.2d 882, 887.

The presentation of a pleading or other paper to the court certifies that, to the best of that person's knowledge and belief "formed after an inquiry reasonable under the circumstances," the factual contentions thereof "have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. Fed. R. Civ. Pro. 11(b)(3). The certification is designed to create an affirmative duty of investigation both as to law and as to fact, and thus to deter frivolous actions and costly meritless maneuvers. *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*(1991) 498 U.S. 533, 550; *Golden Eagle Distributing Corp., supra,* 801 F.2d 1531, 1536.

Whether the certification is violated is tested objectively; i.e. if the paper filed is frivolous, legally unreasonable, or without factual foundation, even though not filed in subjective bad faith. *Zaldivar v. City of Los Angeles* (9th Cir. 1986) 780 F.2d 823, 831. The test is whether a reasonable inquiry would have revealed there was no basis in law or fact for the asserted claim. *Ali v. Mid-Atlantic Settlement Services, Inc.* (D. DC 2006) 233 Frd 32, 39.

Rule 11 imposes an affirmative duty on attorneys to conduct a reasonable inquiry into the applicable law and facts prior to filing. "Reasonable inquiry" requires attorneys to seek credible information rather than proceed on mere suspicions or supposition.

*California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.* (9th Cir. 1987) 818 F. 2d 1466, 1472.  Credible information may consist either of direct evidence or reasonable inferences from other evidence.  *Id.*  Since Plaintiff is a pro se litigant, this affirmative duty is imputed to him as he is held to the same standards and requirements as those attorneys are held to.

## III.

## STATEMENT OF THE CASE

Plaintiff filed this lawsuit on or about February 28, 2012, claiming TMLG violated the FCRA, FDCPA, Rosenthal Act, and CCRAA, and committed the intentional torts of Invasion of Privacy/ False Light and Defamation – Libel, all by allegedly running Plaintiff's credit report without a permissible purpose.  (*See generally* Complaint). Plaintiff also alleges that proper notice of the debt collection was being sought on and his right to request validation of the same within 30 days, was no provided to him by TMLG in violation of the FDCPA.

Plaintiff pled no facts to support these allegations other than specific alleged dates that Plaintiff's credit report was run by TMLG; and mere conclusive statements that TMLG had no permissible purpose to run Plaintiff's credit report, no permission to run Plaintiff's credit report, that the alleged running of Plaintiff's credit report constituted false representation and deceptive means and unfair and unconscionable means used in the collection of a debt, that the alleged credit inquiries were defamatory and libel per se, that

Plaintiff's right to privacy was violated in the alleged running of the credit report and that such alleged credit inquiry showing on his report places him in a false light before others, and that TMLG failed to provide proper notice of debt collection and right to request verification.

Not only are such mere conclusive allegations not enough to meet pleading standards; more importantly, TMLG had an absolute right to run Plaintiff's credit report in connection with the collection of Plaintiff's owing Citibank credit card account currently ending 2567 ("Account"), whose receivables are currently owned by Asset Acceptance, LLC, as statutorily provided for by the FCRA. Plaintiff voluntarly opened the Account and years later subsequently defaulted on the Account, ceasing to make the minimum required monthly payments on it, and leaving an outstanding balance owing on the Account of $7,453.71.

TMLG pulled Plaintiff's credit report one and only one time, on March 25, 2011, not the multiple times alleged in the Complaint; and it was in direct relation to collection of Plaintiff's Account. TMLG mailed an initial demand letter on February April 26, 2011 which gave Plaintiff full and proper notice of what debt TMLG was seeking collection on and Plaintiff's right to request verification of the same within 30 days. There has been no subsequent collection activity on the Account by TMLG.

///

# IV.

## ARGUMENT

Plaintiff's claims hinge on Plaintiff proving that TMLG was not entitled to the permissible purpose for running a credit report in connection with the collection of a debt, as provided for in the FCRA. TMLG was collecting on a debt voluntarily entered into by Plaintiff, and which no identity theft claim had been made in regards to. Furthermore, the FCRA is not a strict liability statute; without actual knowledge of and disregard of an identity theft claim, TMLG's pulling of Plaintiff's credit report remains permissible. Pursuant to FCRA 15 U.S.C. §1681(b) ("§1681(b)"), TMLG had the absolute right to run a credit report.

The FCRA regulates the reporting and use of credit information. 15 U.S.C. §1681 et seq. The FCRA typically regulates the consumer credit reporting activities of three types of persons: (1) credit reporting agencies -- e.g., TransUnion, Experian and Equifax (defined at 15 U.S.C. §1681a(f)); (2) users of information contained in consumer reports (e.g., creditors, employers, insurance companies), like Defendant; and (3) the furnishers of information to credit reporting agencies, including credit card issuers. *See Vazquez-Garcia v. Trans Union De Puerto Rico* (D.P.R. 2002); 222 F. Supp. 2d 150, 153-54.

The FCRA statute §1681b specifically allows a collection law firm such as Defendant to pull a debtor's credit report in connection with collecting on a delinquent

Memorandum of Points and Authorities in Support of Rule 11 Motion

credit card account. §1681b governs permissible purposes for pulling of consumer reports.

15 USC Section §1681b states in part:

> "Subject to subjection (c) of this section, any consumer reporting agency may
> furnish a consumer report under the following circumstances and no other...
>  (3) To a person which it has reason to believe...
>  (A) intends to use the information in connection with a credit transaction
> involving the consumer whom the information is to be furnished and involving the
> extension of credit to, or review or collection of an account of, the consumer; or..."

*Pintos v. Pacific Creditors Association et al* (US Ct. of Appeals, 9th Circuit, 2010) 605

F.3d 665, 674, to qualify under 15 USC Section 1681b(a), the "credit transaction" must

both (1) be a credit transaction involving the consumer on whom the information is to be

furnished and (2) involve the extension of credit to, or review or collection of an account

of, the customer. Plaintiff's FCRA claim is barred as a matter of law since the statute he

alleges was violated, §1681b, specifically allows for Defendant to have inquired into

Plaintiff's credit in the matter at hand and also does not provide a private right of action.

Here, Plaintiff's allegations stem solely from Defendant's allegedly obtaining his

credit report and failing to give proper notice of debt collection and right to request

verification.  The one and only time TMLG pulled Plaintiff's credit report, it was for the

use of information in connection with a credit transaction involving Plaintiff and involving

the review or collection of Plaintiff's Account.  This is conduct specifically allowed per

the statute.

Additionally, in regards to the Complaint's allegations of improper notice by

TMLG, FDCPA §1692g(a) provides: "within five days after the initial communication

with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—(1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor." Such proper and complete notice in full accordance with the FDCPA was provided by TMLG in the initial demand letter it mailed to the Plaintiff days after pulling Plaintiff's credit report.

Counsel for TMLG has made Plaintiff aware, through its served safe harbor letter, that TMLG ran Plaintiff's credit report one and only one time and it was for the FCRA granted permissible purpose of being in connection with the collection of a credit transaction debt, i.e. Plaintiff's defaulted Account; and that proper notice under the FDCPA was given by TMLG in the initial demand letter it mailed Plaintiff. Despite this

prior knowledge of permissible purpose in TMLG's running of Plaintiff's credit report and of proper notice having been provided to Plaintiff regarding the debt collection was being sought on, and therefore no factual support for the any of the Complaint's claims for relief, Plaintiff has failed to withdraw such baseless Complaint.

Void of specific evidence that TMLG is not entitled to its statutory granted permissible purpose for running a credit report, it seems hard to fathom that a reasonable and competent attorney, or here pro se litigant, would believe in the merit of an argument that no permissible purpose existed, as required by the Ninth Circuit when making a determination on whether to impose Rule 11 sanctions.  Moreover, Rule 11(b)(3) requires factual contentions to have evidentiary support upon investigation.   The factual contentions here not only lack evidentiary support but have evidentiary support to the contrary.

Furthermore, it also seems hard to fathom that a reasonable and competent attorney, or here pro se litigant would believe in the merit of an argument that the running of a credit report in connection with the collection of a debt constituted invasion of privacy, defamation and libel per se, false representation and deceptive means used in the collection of a debt, and unfair and unconscionable means used in the collection of a debt.

Finally, Plaintiff's Complaint although filed in pro se is virtually identical to multiple receipt federal complaints that have been served on TMLG, many of which have related state court actions for which a specific attorney has consistently filed substitutions

of attorney as the counsel of record in, and in some of which this same attorney has substituted in on. Each one of these federal complaints contains the same claims for relief, the same conclusive arguments and statements in support of the claims, and even contain the same damages questionnaire attached to them. It is TMLG's belief that these complaints were all ghostwritten by the same entity on behalf of the pro se litigants who filed them, and that this specific attorney is likely to be substituting in as attorney of record in this case as well. As the Court is aware, the practice of ghostwriting is not permissible in federal court. Ghostwriting is an inappropriate practice and is met with universal disfavor in the federal courts. *Liguori v Hansen* 2012 WL 760747 (D. Nev. 2012); *In Re Brown* 354 B.R. 535. 541 (Bankr. N.D. Okla. 2006). *Duran v. Carris* held that when an attorney authored a brief that the pro se party signed, both the pro pse party and the attorney had made a misrepresentation to the court; and condemned such practice of ghost writing pleadings. 238 F.3d 1268, 1272(10th Cir. 2001); *Cited as authority by McNichols v. Citibank, et. al.* (N. Dist. CA 2012) Case Number 3:11-cv-02406-MMC Order on Request for Fees and Costs entered April 26, 2012. "If a brief is prepared in any substantial part by a member of the bar, it must be signed by him." *Ellis v. Maine* 448 F.2d 1325, 1328 (1st Cir. 1971); *cited as authority by McNichols, supra.* Whether Plaintiff practiced such impermissible ghostwriting for the present Complaint, is another factor to consider in the determination of Rule 11 Sanctions. Plaintiff cannot hide behind a pro se litigant shield and claim that he did not know of the duty to perform such reasonable

investigation as required by Rule 11 when the Complaint was in fact ghostwritten for him by an attorney who surely is aware of such affirmative duty prior to the execution and filing of a complaint.  Such ghostwriting actions, only strengthen TMLG's argument for sanctions to be imposed in this present case.  However, even if the Court was to find that no such ghostwriting occurred, pro se litigants are held to the same standards as attorneys and Rule 11's requirements prior to execution, or certification, of and filing of a complaint, still apply to them.

The purpose of Rule 11 sanctions is essentially to act as a deterrent to future litigation abuse and to provide a remedy for that abuse.  Here, there is no dispute that Plaintiff has no evidence to support the Complaint's allegations against TMLG.  Every single one of the Complaint's claims are frivolous, and fail as a matter of law.  Had Plaintiff's Counsel performed the requisite reasonable investigation of his client's claims, he would have discovered this lack of evidentiary support and that they were already pending in a state court action.  The fact that Plaintiff's Counsel and Plaintiff continue to maintain these baseless allegations is disturbing to say the least.  Rule 11 was written precisely to discourage the exact type of behavior Plaintiff's Counsel has exercised in this case and the complete failure of his part to conduct any kind of reasonable investigation.

## IV.

## CONCLUSION

For the foregoing reasons, TMLG respectfully requests that the Court enter an Order sanctioning Plaintiff for failing to reasonably investigate claims before filing a Complaint with the Court, and for persisting in pursuing meritless claims, even after the absence of merit was provided to them.

TMLG seeks sanctions in the amount of $2,750.00 for attorneys' fees for the hours spent: (1) investigating account history notes; (2) preparing a Safe Harbor Letter and Drafting the Notice of Motion and Motion for Rule 11 Sanctions, Memorandum of Points and Authorities in Support, Declaration of Terri Lazo in Support, and Proposed Order; (3) drafting a Motion to for Summary Judgment on the Complaint on behalf of TMLG; (5) and attending the hearing on the Rule 11 Motion and the Motion for Summary Judgment. (See Declaration of Terri Lazo, filed concurrently.)

Dated:  May 11, 2012

The Moore Law Group, APC

By: _____

Harvey M. Moore
Terri Lazo
Attorneys for Defendant
The Moore Law Group, APC

**CERTIFICATE OF SERVICE**

I, Terri Lazo, do hereby certify that on May 11, 2012, a copy of the forgoing document was served via U.S. Mail on:

Hakob Ayvazian
1010 E Magnolia Blvd
Burbank, CA 91501

TERRI LAZO