O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAKOB AYVAZIAN, an individual,<br><br>　　　　　　　Plaintiffs,<br>　　v.<br>THE MOORE LAW GROUP, A California Company; NELSON & KENNARD, A California Professional Company; ENCORE RECEIVABLE MANAGEMENT, INC., a Kansas Corporation; REDLINE RECOVERY SERVICES, LLC, A New York Limited Liability Company; ASSET ACCEPTANCE, LLC, A Delaware Limited Liability Company,<br><br>　　　　　　　Defendants. | Case No. 2:12-CV-01506-ODW(Ex)<br><br>**ORDER GRANTING SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE RULE 11 [23]** |

## I.   INTRODUCTION

Before the Court is Defendant The Moore Law Group's ("TMLG") Motion for Sanctions against Plaintiff Hakob Ayvazian pursuant to Federal Rule of Civil Procedure 11. (ECF No. 23.) For the reasons discussed below, TMLG's Motion is **GRANTED**.[1]

---

[1] Having carefully considered the papers filed in support of and in opposition to the instant Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L. R. 7-15.

## II. BACKGROUND

Plaintiff filed this action on February 28, 2012, claiming TMLG (and myriad other Defendants) violated the Fair Credit Reporting Act ("FCRA"), the Fair Debt Collection Practices Act ("FDCPA"), California's Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), and California's Consumer Credit Reporting Agencies Act ("CCRAA"), and committed the intentional torts of invasion of privacy and defamation—all by allegedly running Plaintiff's credit report without a permissible purpose. But Plaintiff's Complaint pleads no facts supporting these allegations, save for alleging the specific dates Plaintiff alleges TMLG ran Plaintiff's credit report (March 24, 2011, and March 25, 2011). (Compl. 8:21.) Plaintiff then broadly alleges on information and belief that "at some point Defendants must have tried to purchase debts alleged to be owed by Plaintiff, considered purchasing debts alleged to be owed by Plaintiff, or looked into Plaintiff's history as a potential debtor for overdue and unsatisfied account balances to collect on." (Compl. 8:26–9:1.) Plaintiff offers no other facts tied specifically to her or any of the Defendants named in this case.

TMLG, on the other hand, maintains that it ran Plaintiff's credit report only once—on March 25, 2011—in direct relation to collection on Plaintiff's account. (Mot. 6.) TMLG further contends that it initially mailed Plaintiff a demand letter on April 26, 2011, giving Plaintiff notice of the debt and Plaintiff's right to request verification of the debt within 30 days. (*Id.*)

In light of the factual deficiencies in Plaintiff's Complaint, TMLG contends it served Plaintiff a "safe harbor" letter pursuant to Rule 11(c)(2) on May 11, 2012, which was at least 21 days prior to the date TMLG filed its Motion for Sanctions. (Mot. 2 n.1 & Lazo Decl. ¶ 7.) The letter contained TMLG's proposed Notice of Motion and Motion for Rule 11 Sanctions, the Memorandum of Points and Authorities in support of the Motion, and the declaration of Terri Lazo in support of the Motion.

(Mot. 2 n.1 & Lazo Decl. ¶ 7.) Following Plaintiff's failure to act on TMLG's notice, TMLG filed the instant Motion on June 4, 2012. (ECF No. 23.)

TMLG now seeks sanctions in the amount of $2,750.00 for attorney's fees for the nine hours spent investigating account history notes, preparing the safe harbor letter and drafting the instant Motion, preparing TMLG's concurrently filed motion for summary judgment (ECF No. 14), plus an estimated additional one hour for traveling to and attending the hearing on the Motion. (Lazo Decl. ¶¶ 7–10.) TMLG's Counsel, Terri Lazo's hourly rate is $275.00 per hour. (Lazo Decl. ¶ 8.)

### III. LEGAL STANDARD

The Ninth Circuit has held that Rule 11[1] is designed to deter the filing of frivolous pleadings. *Riverhead Sav. Bank v. Nat'l Mortg.Equity Corp.*, 893 F.2d 1109, 1115 (9th Cir. 1990). Because Rule 11 "is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories," *Riverhead*, 893 F.2d at 1115), courts have interpreted the rule to "prescribe sanctions, including fees, only in the 'exceptional circumstance,' where a claim or motion is patently unmeritorious or frivolous." *Riverhead*, 893 F.2d at 1115 (quoting *Doering v. Union Cnty. Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3rd. Cir. 1988)).

The Ninth Circuit defines a frivolous claim or pleading for Rule 11 purposes as one that is "legally or factually 'baseless' from an objective perspective . . . and made without a reasonable and competent inquiry." *Q-Pharma v. Andrew Jergens Co.*, 360

---

[1] The Federal Rule of Civil Procedure 11(b)(1)–(3) provides:
> By presenting to the court a pleading . . . an attorney . . . certifies that to the best of [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law...; [and] (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

F.3d 1295, 1299 (Fed. Cir. 2004) (quoting *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002)). Furthermore, in assessing a case for frivolousness, "[t]he key question . . . is whether a complaint states an arguable claim—not whether the pleader is correct in his perception of the law." *Riverhead*, 893 F.2d at 1115 (quoting *Hudson v. Moore Bus. Forms, Inc.*, 827 F.2d 450, 453 (9th Cir. 1987)).

Sanctions "may be composed of either or both a penalty payable to the court, and/or an award of reasonable attorneys' fees to the opposing party for those fees and other expenses incurred as a direct result of the violation," *Truesdell v. S. Cal. Permanente Med. Grp.*, 209 F.R.D. 169, 175 (C.D. Cal. 2002) (citing Fed. R. Civ. P. 11(c)(2)), provided the amount of such sanctions "is limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated," Fed.R.Civ.P. 11(c)(4).

An award of attorney's fees may only be made "on motion and [if] warranted for effective deterrence." *Id.* "Whenever the district court imposes sanctions on an attorney, it must . . . afford the attorney notice and an opportunity to be heard." *Weissman v. Quail Lodge, Inc.*, 179 F.3d 1194, 1198 (9th Cir.1999).

## IV. DISCUSSION

Plaintiff's entire claim is based on the allegation that TMLG violated the FDCPA, Rosenthal Act, FCRA, and CCRAA, and committed intentional torts of invasion of privacy and defamation, all by running Plaintiff's credit report without a permissible purpose. Plaintiff's Complaint offers virtually no facts tied specifically to Plaintiff or any of the Defendants named in this case. The Court will briefly consider each claim in view of the allegations in the Complaint.

First, Plaintiff alleges violations of the FDCPA, 15 U.S.C. § 1692(e), and California's Rosenthal Act, Cal. Civ. Code § 1788.17, broadly arguing that TMLG failed to provide notice of debts and used deceptive and unconscionable means to collect debts. The Rosenthal Act provides that, with limited exceptions, "every debt collector collecting or attempting to collect a consumer debt shall comply with the

provisions of" the FDCPA. Cal. Civ. Code § 1788.17. Because the Rosenthal Act specifically incorporates provisions of the FDCPA, "[l]ike the FDCPA, the RFDCPA applies only to debt collectors." *See Izenberg v. ETS Servs., LLC.*, 589 F. Supp. 2d 1193, 1198 (C.D. Cal. 2008).

A "debt collector" under the Rosenthal Act is "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." Cal. Civ. Code § 1788.2(c). Section 1788.2(c) expressly excludes "an attorney or counselor at law"; thus, "[a] creditor's counsel retained for the purpose of collecting a debt is not a 'debt collector' within the meaning of the Rosenthal Act." *Owings v. Hunt & Henriques*, No. 08cv1931-L(NLS), 2010 WL 3489342, at *3 (S.D. Cal. Sept. 3, 2010) (citing *Carney v. Rotkin, Schmerin & McIntyre*, 206 Cal. App. 3d 1513, 1518, 1526 (1988) (rejecting the contention that section 1788.2(c) exempts attorneys but not law firms).

TMLG is a law firm. Thus, it is expressly exempted from liability under both the FDCPA and the Rosenthal Act. A sufficient inquiry into fact and the legal standards of each act would have clearly revealed this to Plaintiff.

Moreover, Plaintiff's FDCPA and Rosenthal Act claims are rife with glaring pleading deficiencies, which suggest a serious lack of factual investigation prior to filing suit. Plaintiff's Complaint cursorily alleges that "Defendants are debt collectors as defined in *15 U.S.C. §1692a(6)*and [*sic*] *Cal. Civ. Code §1788.2(c)*," without any explanation of how TMLG constitutes a debt collector under either statute. (Compl. 8:6–8.) In addition, Plaintiff fails to allege whatsoever that TMLG was attempting to collect a "debt" within the meaning of the FDCPA, 15 U.S.C. § 1692a(5), or a "consumer debt" under the RFDCPA, Cal. Civ. Code §1788.2(e), (f). Plaintiff's Complaint therefore facially fails to state either claim against TMLG, or any Defendant for that matter.

Plaintiff further alleges that TMLG violated the FCRA, 15 U.S.C. § 1681(b), and the CCRAA, Cal. Civ. Code § 1785.11, on grounds that TMLG "[obtained] and

[reviewed] Plaintiff's credit report from CRA's without having permissible purpose." The CCRAA applies on its face only to the *furnishing of* a consumer credit report *by a consumer credit reporting agency*. Plaintiff's allegations can in no way state a claim under either the FCRA or CCRAA, as TMLG is not a credit reporting agency. In addition, Plaintiff concedes that TMLG obtained a credit report *from* credit reporting agencies, not that it furnished a credit report *as* a credit reporting agency.

Plaintiff lastly accuses Defendant of committing invasion of privacy and defamation. Even a cursory review of the legal standards regarding Plaintiff's tort claims would indicate that merely alleging that Defendant ran Plaintiff's credit report without permission is wholly insufficient to state arguable claims for these torts.

The conclusory allegations set forth in this action are not only insufficient to meet pleading standards, but are so baseless as to render Plaintiff's Complaint frivolous and a clear abuse of the judicial process. Rule 11(b)(3) requires factual allegations to have evidentiary support upon reasonable investigation. Plaintiff has provided no support for the claims in his Complaint, and has made no showing that he made a competent inquiry into law and fact before bringing this action. By carelessly stating facts that have no evidentiary support, Plaintiff has failed to comply with Rule 11.

Finally, the Court notes that although Mr. Ayvazian is a *pro se* litigant, his Complaint is almost *identical* (save for the named defendants) to multiple federal complaints filed against TMLG by one specific attorney: Arshak Bartoumian. In its Motion, TMLG notes a high probability that these complaints are ghostwritten by Mr. Bartoumian on behalf of Mr. Ayvazian. The Court agrees. These nearly identical actions have been either directly filed by Mr. Bartoumian or filed by other *pro se* litigants for whom Mr. Bartoumian has subsequently substituted in as the attorney of record.

The Court reminds the Plaintiff that the practice of "ghostwriting" violates the rules of professional conduct, and undermines the litigant's status as *pro se*. *Ricotta v.*

*State of Cal.*, 4 F. Supp. 2d 961, 987 (S.D. Cal. 1998) (noting that "attorneys cross the line . . . when they gather and anonymously present legal arguments, with the actual or constructive knowledge that the work will be presented . . . in a motion before the [c]ourt."). The likelihood that the impermissible practice of ghostwriting was used in the present Complaint is but another factor in support of the Court's decision to grant sanctions under Rule 11.

In sum, the Court finds that TMLG's Motion for sanctions is timely, and Plaintiff has received adequate notice and a reasonable opportunity to respond. The Court further finds that TMLG has met its burden in bringing a motion for sanctions. Plaintiff's Complaint is the exact type of frivolous pleading that Rule 11 was designed to deter. Plaintiff has set forth baseless allegations and has not pleaded facts sufficient to maintain claims as a matter of law. The Court therefore **GRANTS** TMLG's Motion for Sanctions under Rule 11 in the amount of $2,750.00.[2]

### V.   CONCLUSION

For the reasons discussed above, Defendant's Motion for Rule 11 sanctions is **GRANTED** in the amount of $2750.00.

**IT IS SO ORDERED.**

June 26, 2012

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**

---

[2] The Court notes that Defendant did not expend the estimated one hour for traveling to and attending the hearing on this Motion. However, Plaintiff additionally sought costs. (Lazo Decl. 11.) The Court finds that the $275.00 that results from applying Ms. Lazo's rate of $275 per hour by the estimated one hour should sufficiently cover Defendant's costs and serve as an amount necessary to deter future similar conduct by Plaintiff and others similarly situated.